## LEWIS S. HUNTER v. NORTHERN IOWA BRICK & TILE CO., Appellant.

**Master and servant:** RULES OF EMPLOYMENT: NEGLIGENCE. A mere custom adopted by employees for their own safety, though known to the employer, will not as a matter of law relieve the master of the duty of establishing a system of carrying on the work, which will with reasonable certainty avoid injury to the workmen from the operation of machinery with which they are engaged. Under the evidence in the instant case it is *held*, that the question of whether the custom of signaling the starting of the engine in an adjoining room, as adopted by employees, was the equivalent of such a system of warning as the defendant should have provided, was for the jury.

**Same:** ASSUMPTION OF RISK. One engaged in the repair of machinery may assume that a proper system of warning employees of the starting and stopping of the machinery by a co-employee has been established and will be enforced; and if unaware of the master's failure to provide such a system he may assume that the system adopted by an employee charged with the operation of the machinery was known to and adopted by the employer; and he need not inquire into the sufficiency of the system for his safety, or whether it had been recognized by the employer as an essential condition under which the work should be done; and the question of assumption of risk is for the jury, unless the evidence is such that the injured party, as a reasonably prudent person, must have appreciated the danger involved.

**Same:** CONTRIBUTORY NEGLIGENCE. The question of plaintiff's contributory negligence in working about a pulley without a plat-

form on which to stand, and under circumstances requiring him to maintain his position by holding onto a support, and thus working under the assumption that the machinery would not be started without warning, was for the jury.

*Appeal from Cerro Gordo District Court.*—HON. J. J. CLARK, Judge.

WEDNESDAY, JUNE 5, 1912.

ACTION to recover damages for personal injuries received by plaintiff while in defendant's employment, and alleged to have been due to defendant's negligence. There was a verdict for plaintiff, and from judgment on this verdict the defendant appeals.—*Affirmed.*

*Blythe, Markley, Rule & Smith* and *Cliggitt, Rule & Smith,* for appellant.

*Wade, Dutcher & Davis* and *T. G. McDermott,* for appellee.

McCLAIN, C. J.—The defendant corporation was, at the time of the accident hereinafter described, engaged in operating a plant for the manufacture of brick and tile. The machine room in which the accident happened was more than one hundred and fifty feet long north and south, about fifty-five feet wide, and twenty-seven feet from the ground floor to the girders of the roof. In this room were two machines used in grinding clay, situated on the ground floor and operated by shafting connected by means of belts with a power shaft, which was in turn connected by a main belt with the engine in an adjoining room to the west. The engine room was entirely separated from the machine room by a wall of hollow tile, through which there was an opening for the main belt to pass. The operation of the machines, as to their starting and stopping, was in charge

of one Wright, an employee; while the engine in the adjoining room was in charge of an engineer, who started and stopped the engine on signals from Wright, given by means of a wire attached to a gong in the engine room. Either of the two machines could be disconnected from the power shaft by throwing off the belt from the pulley. Plaintiff was, and had been for several months prior to the accident, in the employ of the defendant as machinist and blacksmith; his business being to make repairs on any of the machinery. He was experienced in his work. The evidence for the plaintiff tended to show that on the morning of the accident and before seven o'clock, which was the usual time for starting the machinery, plaintiff was advised by one Smith, who was the superintendent, that the north machine was not in condition for use, and that the south machine would be started as soon as plaintiff could put it into condition for starting; that plaintiff, in oiling the south machine preparatory to its being started, found the hard oil cup connected with the north end of the shaft of the machine to be broken off, and went to the shop, and, having fixed the broken pipe of the oil cup, so that he could again screw it into place, went back with his tools to the machine, and, climbing up at its north end on the wooden trestlework which supported the shaft, and holding to the large pulley, which was at that end of the shaft, attempted to replace the oil cup, and while he was so engaged the machine was caused to start, with the result that his right arm was caught between the belt and the pulley and torn off above the elbow. The evidence also tends to show that Wright, with the assistance of other employees, and without plaintiff's knowledge, had placed the power belt on the pulley of the machine at which plaintiff was working, and by a signal to the engineer in the engine room had caused the machine to be started.

1. Several grounds of negligence of the defendant were alleged for plaintiff, but of these the court submitted

to the jury only two, which were, first, alleged negligence in
not providing for plaintiff a' safe place in
which to work; and, second, in not having
an adequate system or method of signals and
warnings to employees of the starting of the
machinery about which they should be employed. With
reference to these two grounds of negligence, the jury was
instructed as follows:

1. MASTER AND
SERVANT:
rules of
employment:
negligence.

The place where the plaintiff performed his duties
must be regarded as a safe place, so far as he had any
right to demand or require of defendant, unless you find
he has proved it was rendered unsafe by reason of the lack
of system or means of signals and warnings, or lack of
instructions to plaintiff and other employees as to dangers
of the work to be avoided, not known to, or should not have
been known with due care, or appreciated by them, and
in failing to exercise due care and supervision over said
machinery and employees of said plant to enforce obedi-
ence to said rules, and thereby prevent said machinery
being started while plaintiff was in a dangerous position.

The court also instructed the jury as follows:

While I have withdrawn from you as grounds of negli-
gence of defendant the question of platform and of light,
yet you are instructed that the character of the place with
reference to the structure and the lights may be considered
by you in determining the question of contributory negli-
gence, and in determining the question of the reasonable-
ness or sufficiency of rules, as explained.

And with regard to rules and regulations, this further
instruction was given:

In determining the question submitted pertaining to
the requirement of the master that he shall furnish rules,
regulations, or system in the conduct of the business, you
are instructed that the character of such rules, regulations,
or system should be reasonable, in view of the duties to be
performed by the employees and the nature and character
of the place furnished by the master in which the employee
is required to perform such duty or duties.

The general complaint of appellant with reference to these instructions is that they require fixed and formal rules and methods as to the giving of signals; that it was shown by the evidence, without conflict, that there was a sufficient system of signals in force, by custom, to plaintiff's knowledge, rendering any formal rules unnecessary; and that if Wright was negligent in failing to give the signal required by such custom his negligence was that of a fellow servant, for which the defendant was not liable, so far as the injury to plaintiff resulted from such failure.

There is evidence tending to show that the signal to the engineer to start his engine was given by two taps on the gong in the engine room, as above described; that the sounding of the gong by means of an automatic hammer, released by a pull of the wire from the machine room, could be heard throughout the machine room by the employees engaged therein; and that it was also the custom of Wright, before sounding the bell for the starting of the engine, to call a warning by such words as: "Look out; the engine is going to start." But, under the evidence and the instructions, it was for the jury to say whether the custom with reference to the giving of signals constituted a system of conducting the business for the purpose of affording warning to employees as to dangers of the work, and whether the warning thus afforded was reasonably sufficient under the circumstances under which the work was carried on.

It may be conceded, for the purposes of this case, that a general custom to give warnings, which is known to the employees and recognized by them as giving rise to a duty on their part to the employer and to their fellow workmen to conform to its requirements, may be sufficient as constituting a system of warning and protection, although not embodied in formal rules or directions, either written or oral. But, under the evidence in this case, it was a question of fact whether the custom or the usage of the em-

ployees was such as to constitute a system of warning equivalent to such as should have been provided by the defendant. So far as the evidence indicated, defendant had never given any direction that there should be a warning of the starting of the engine, other than that afforded by the sounding of the gong. It is not contended that Wright had ever been directed to give an oral warning, or that his customarily doing so was the result of any plan or system on the part of the defendant. He was not a superintendent, whose adoption of a plan could be regarded as the act of the defendant, and this is vital in the case; for, under the theory adopted by the trial court in its instructions, which became the law of the case, his failure in this instance to call out a warning (which his testimony tended to establish, although there was a conflict as to the fact under the evidence) was the negligence of a co-employee for which defendant was not responsible. It is quite clear, we think, that, to constitute such a system of warning as was the duty of the defendant to establish and enforce, something more was necessary than the mere usage on the part of one co-employee, initiated, so far as appears from the record, in accordance with his own judgment, even though it may have been known to the employer, to give such a warning, in order to render the place in which the work was carried on a safe place in which to work. A mere custom or practice adopted by employees for their own safety necessarily lacks the importance or force of a rule promulgated by the employer for the protection of its employees; and whether a definite rule should have been promulgated or a more adequate system adopted was necessarily a question for the jury. *McCoy v. New York C. & H. R. R. Co.*, 185 N. Y. 276 (77 N. E. 1174); *Hartvig v. N. P. I. Co.*, 19 Or. 522 (25 Pac. 358); *Abel v. Delaware & H. C. Co.*, 103 N. Y. 581 (9 N. E. 325, 57 Am. Rep. 773).

Authorities are cited for the appellant to support the

proposition that, where there is a custom or practice in force among employees which is adequate and renders a formal rule unnecessary, a failure to promulgate a formal rule will not constitute negligence. See *Kudik v. Lehigh Valley R. Co.,* 78 Hun 492 (29 N. Y. Supp. 533); *Luebke v. Chicago, M. & St. P. R. R. Co.,* 63 Wis. 91 (23 N. W. 136, 53 Am. Rep., 266); *Campbell v. Texas & P. R. Co.,* 16 Texas Civ. App. 665 (39 S. W. 1105); *Rutledge v. Missouri Pacific R. Co.,* 123 Mo. 121 (24 S. W. 1053, 27 S. W. 327); *Barto v. Detroit Iron, etc., Co.,* 155 Mich. 94 (118 N. W. 738). But these cases fall far short of establishing the proposition contended for in behalf of appellant, that the custom indicated by the evidence in this case, as matter of law, constituted a sufficient and adequate substitute for some rule or regulation or system of carrying on the work reasonably calculated to avoid injury to the employee working about defendant's machinery likely to result to him from the starting of the machinery without warning to him.

Although the evidence established, without controversy, the fact that a gong was installed in the engine room, which was to be struck, by means of a wire connected with the machinery room, before the engine should be started, and that the sound of such gong could usually be heard in the machinery room, there was still a question for the jury whether the method of warning thus provided was reasonably adequate; and its inadequacy might have been found by the jury as a matter of fact, in view of the evidence tending to show that the sound was not calculated to attract the attention of all the workmen engaged in the large machinery room wholly separated by a wall from the engine room, and that the duty of the engineer was to start his engine immediately upon the sounding of the gong, without allowing any time to elapse during which the employees should have opportunity to place themselves in positions of safety. The fact that the gong was to be twice rung be-

fore the engine should be started is of no significance in this connection, for two strokes of the gong constituted the signal for starting the engine, while one stroke was the signal for stopping it; and it is evident, therefore, that the system of signaling adopted involved only two quick strokes, without any appreciable interval of time. It is not contended that the system adopted was first to give a warning stroke and then a second stroke, on which the engine was started. The undisputed facts in the case were such as to make it clear, therefore, that the jury might reasonably find the system of warning to be insufficient.

While plaintiff was working about a pulley carrying a belt, and necessarily supporting himself in a somewhat precarious position by holding onto the pulley with one hand as he adjusted the oil cup with the other, having no platform on which to stand and no railing or handhold provided to which he could cling, the machinery was set in motion by two taps on an eight-inch gong in an adjoining room, and his arm was caught between the belt and pulley, when the machinery started. Unless he had assumed the risk of such a method of operation of the machinery, or was guilty of contributory negligence in placing himself in such position of danger, the jury might well find that defendant was liable under the evidence tending to show that, in view of the dangers generally surrounding his employment as machinist, and the special danger involved in the failure to provide a platform on which to more securely stand while engaged in this particular work, the defendant had failed to furnish a reasonably safe place for the plaintiff to carry on the work originally instrusted to him.

It is said that, although the alleged negligence in failing to furnish a platform on which plaintiff might safely perform this particular work, and to adequately light the place where he was at work, were withdrawn from the

jury as independent grounds of negligence, they were in fact reincorporated in the grounds of negligence submitted to the jury by the instruction authorizing them to be considered in determining the question of sufficiency of rules. But there was plainly no error in the instruction in this respect; for the rules, regulations, and system in regard to warning should have been reasonably adapted to the situation of plaintiff as he was working in the proper discharge of his duty, and, if he was so working as that warning was essential to his safety, then a failure to provide for it would constitute negligence.

II.   In regard to assumption of risk, the argument for appellant is that, in view of plaintiff's knowledge of the method in which the work was usually conducted, he must necessarily have assumed the risk involved in any failure to provide a reasonable system for giving warning of danger.   But it does not appear that he was aware of defendant's failure to provide and generally enforce the observance of such a reasonable system.   He may well have assumed that the system adopted and enforced by the defendant involved an oral warning by Wright before the machinery would be started; and, as already indicated, the jury may well have found that no such warning was required by any direction of defendant, or by any general custom recognized by defendant and its employees as the proper and safe method in which to conduct the work.   He was not bound to make inquiry in regard to the sufficiency of the rules and regulations in this respect, nor to find out whether the usage which he had observed on the part of Wright to call out before the machinery was started was recognized by the defendant and its employees as an essential condition under which the work should be carried on.   He had a right to assume that proper methods of doing the work on the part of his co-employees were required and insisted upon by

2. SAME:
  assumption
  of risk.

the defendant. *Polaski v. Pittsburgh Coal Dock Co.,* 134 Wis. 259 (114 N. W. 437, 14 L. R. A. (N. S.) 952).

The general rule that assumption of the risk is a question for the jury, unless the evidence shows, without dispute, that the injured party should, as a reasonably prudent person, have appreciated the danger involved, is too well settled in the decisions of this court to justify a citation of cases.

III. No complaint is made in regard to the instructions as to contributory negligence; and it was for the jury to say whether, in view of the situation under which plaintiff was required to work about the pulley, without a platform on which to stand,

3. Same: contributory negligence.

and under circumstances requiring him to keep himself in place by holding to some support, under the assumption that the machinery would not be started without warning, he was negligent in thus supporting himself by taking hold of the pulley, rather than by holding to an adjoining timber. It would be difficult to explain from the record just how the plaintiff might have adequately held himself in place without being in danger of injury from the sudden starting of the machinery; and this very difficulty is sufficient to warrant the conclusion that the question of contributory negligence in this respect was one of fact. The question of lighting was, in this respect, also material; and we can not say, as matter of law, that plaintiff was negligent in not proceeding otherwise than as he did proceed in performing his work.

After a careful consideration of all the questions presented in appellant's argument, we reach the conclusion that no error on the part of the trial court is made to appear; and the judgment is—*Affirmed.*